IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | : CRIMINAL NUMBER: 5:13-CR-12-MTT |
| v. | : Filed at _____ 1:14 P.M. |
| JIN NOH a/k/a "SUNNY" | : 1/16, 2014 |
| | : Deputy Clerk, U.S. District Court Middle District of Georgia |

## PLEA AGREEMENT

It is agreed by the United States of America, by and through its undersigned attorney, and **JIN NOH**, hereinafter referred to as "Defendant," and defendant's undersigned attorney, as follows:

(1)

Defendant acknowledges that defendant has reviewed and discussed the indictment and information against defendant in this matter with defendant's attorney and defendant's attorney has explained to defendant his understanding of the government's evidence.

(2)

The defendant understands that defendant is not required to plead guilty, and that defendant has the right to plead not guilty and to elect instead to be tried by jury. The defendant understands that at a jury trial, defendant would enjoy a presumption of innocence, and that the government would have the burden of proving defendant's guilt

beyond a reasonable doubt. The defendant understands that defendant would be entitled to the services of a lawyer at all stages of such a trial. The defendant understands that defendant would be entitled to confront and to cross-examine the government's proof, and to present witnesses and evidence in defendant's own behalf. The defendant understands that defendant would have the right to testify in defendant's own behalf, but that defendant could not be compelled to do so. Defendant has discussed these rights with defendant's attorney. Defendant is satisfied with the services of defendant's lawyer. Defendant knowingly and voluntarily waives defendant's right to plead not guilty and to proceed to trial.

The United States Attorney and the Defendant understand and agree that the Court should consider its sentence in light of the advisory Federal Sentencing Guidelines, as explained in United States v. Booker, 543 U.S. 220, 125 S.Ct. 738 ( 2005). Defendant knowingly and voluntarily waives any further objections that Defendant may have based on Booker, Apprendi v. New Jersey, 530 U.S. 466 (2000), and their progeny. So the Defendant agrees that at sentencing the Court may determine any pertinent fact by a preponderance of the evidence and the Court may consider any reliable information, including hearsay. The Defendant expressly waives any claim of right to an indictment, trial by jury, and/or proof beyond a reasonable doubt on any factual determinations that pertain to sentencing in this case.

2

J.N

(3)

Defendant being fully cognizant of defendant's rights, and in exchange for the considerations to be made by the United States as set forth in paragraph (4) below, agrees pursuant to Rule 11(c) Federal Rules of Criminal Procedure, as follows:

(A)   The defendant is guilty and will knowingly and voluntarily enter a plea of guilty to Count One (1) of the ~~Information~~ [Superseding] which charges defendant with Misprision of a Felony; in violation of Title 18, United States Code, Section 4.

(B)   That defendant fully understands that defendant's plea of guilty as set forth in Subparagraph (A), above, will subject defendant to a maximum sentence of up to three (3) years confinement, a maximum fine of $250,000 or both, and one (1) year of supervised release. Defendant further acknowledges that the Court is required to impose a mandatory assessment of $100.

(C)   The defendant acknowledges and understands that the Court is not bound by any estimate of the advisory sentencing range that defendant may have received from defendant's counsel, the government, or the Probation Office.  The defendant further acknowledges and agrees that defendant will not be allowed to withdraw defendant's plea because defendant has received an estimated guideline range from the government, defendant's counsel, or the Probation Office which is different from the advisory guideline range computed by the Probation Office in the Presentence Report and found by the Court to be the correct advisory guideline range.

(D)   The defendant understands fully and has discussed with defendant's attorney that the Court will not be able to consider or determine an advisory guideline

3

sentencing range until after a pre-sentence investigative report has been completed. The defendant understands and has discussed with defendant's attorney that the defendant will have the opportunity to review the pre-sentence investigative report and challenge any facts reported therein. The defendant understands and has discussed with defendant's attorney that any objections or challenges by the defendant or defendant's attorney to the Pre-Sentence Report, the Court's evaluation and rulings on that Report, or the Court's sentence, will not be grounds for withdrawal of the plea of guilty.

(E)  Defendant understands and has discussed with defendant's attorney that after the Court considers the advisory guideline range for this case, the Court will have the discretion to impose a sentence that is more severe or less severe than the advisory guideline range.

(F)  Defendant agrees to provide a check for the mandatory assessment at the time of sentencing.

(G)  Defendant understands, and has fully discussed with defendant's attorney, that the Court shall order total restitution in this case pursuant to 18 U.S.C. § 3663A and that defendant agrees to pay the restitution ordered by the Court whether to an identifiable victim or the community.

(H)  The defendant understands that ordinarily Title 18, United States Code, Section 3742, will in certain cases allow for a direct appeal after sentencing followed by the Court of Appeals' limited review of a defendant's sentence. But once this agreement is accepted and sentence is imposed by the District Court, defendant by this agreement

4



forever waives any right to an appeal or other collateral review of defendant's sentence in any court. However, in the event that the District Court imposes a sentence that exceeds the advisory guideline range, then the defendant shall retain only the right to pursue a timely appeal directly to the Court of Appeals after the District Court imposes its sentence. In the event that the defendant retains the right to a direct appeal, that right is limited to appealing sentencing issues only.

The defendant and the United States Attorney agree that nothing in this plea agreement shall affect the government's right or obligation to appeal as set forth in Title 18, United States Code, Section 3742(b). If, however, the United States Attorney appeals the defendant's sentence pursuant to this statute, the defendant is released from defendant's waiver of defendant's right to appeal altogether.

(l)   The defendant understands that the Government may have various items of biological evidence in its possession in connection with this case that could be subjected to DNA testing. Biological evidence for this purpose is defined as any sexual assault forensic examination kit and any other evidence that, in the course of the investigation and prosecution of this matter, has been detected and has been identified as semen, blood, saliva, hair, skin tissue, or some other type of biological material.

The defendant understands that following conviction in this case, she could file a motion with the court to require DNA testing of any such biological evidence pursuant to 18 U.S.C. §3600 in an attempt to prove defendant's innocence. The defendant fully understands this right to have any and all of the biological evidence in this case tested for DNA, has discussed this right with defendant's counsel, and knowingly and voluntarily

5

waives the right to have such DNA testing performed on the biological evidence in this case. Defendant fully understands that because defendant is waiving this right, the biological evidence in this case will likely be destroyed or will otherwise or will otherwise be unavailable for DNA testing in the future.

The defendant and the government stipulate and agree that there was no detected or identified biological evidence obtained during the investigation and prosecution of the matter which is subject to DNA testing. The defendant further agrees that all evidence obtained in this investigation and prosecution may be destroyed or returned to its rightful owner.

The United States Attorney and the Defendant understand and agree that the Court should consider its sentence in light of the advisory Federal Sentencing Guidelines, as explained in United States v. Booker, 543 U.S. 220, 125 S.Ct. 738 ( 2005). Defendant knowingly and voluntarily waives any further objections that Defendant may have based on Booker, Apprendi v. New Jersey, 530 U.S. 466 (2000), and their progeny. So the Defendant agrees that at sentencing the Court may determine any pertinent fact by a preponderance of the evidence and the Court may consider any reliable information, including hearsay. The Defendant expressly waives any claim of right to an indictment, trial by jury, and/or proof beyond a reasonable doubt on any factual determinations that pertain to sentencing in this case.

(J) Defendant agrees to provide complete, candid, and truthful statements to law enforcement officers regarding defendant's involvement and the involvement of all others involved in the charges alleged in the present indictment as well as any and all

criminal violations about which the defendant has knowledge or information and that such information provided will be pursuant to and covered by this agreement. The defendant further agrees to provide complete, candid, and truthful testimony regarding such matters in any proceeding. The defendant understands that this agreement does not require the defendant to implicate any particular individual or individuals or to "make a case," rather it requires the defendant to be truthful and to testify truthfully whenever called upon.

(K)   The United States of America and defendant hereby agree that any breach of this agreement by the defendant occasioned by a failure to cooperate, by withholding information, giving of false information, perjury, or failure to testify in any judicial proceeding in connection with the individuals, matters, and transactions referred to in the information, would: (a) not relieve the defendant of defendant's plea of guilty; (b) permit the government to reinstate and proceed with prosecution on any other charges arising from the matters referred to in this information; (c) permit the government to instigate and proceed with the prosecution of any other offenses arising from a breach of this agreement, including perjury, false declaration, false statement, and/or obstruction of justice; and (d) permit the government to utilize against the defendant in any subsequent judicial proceeding any and all statements made by the defendant. If a legitimate issue arises as to whether or not there has been a breach of this agreement, said question shall be determined by the United States District Court for the Middle District of Georgia. The burden of establishing such a breach shall be upon the United States and shall be established by a preponderance of the evidence. The Federal Rules of Evidence shall

7

not apply in any hearing to establish such a breach, but evidence shall be admitted and excluded at the Court's discretion.

(4)

In exchange for the consideration set forth in Paragraph (3) above, the United States Attorney for the Middle District of Georgia agrees as follows:

(A)   That he will accept the plea of guilty by defendant as provided in Paragraph (3)(A), above, in full satisfaction of all possible federal criminal charges, known to the United States Attorney at the time of defendant's guilty plea, which might have been brought solely in this district against the defendant.

(B)   That he further agrees, pursuant to Rule 11(c)(1)(A), Federal Rule of Criminal Procedure, to move the Court at the time of sentencing to dismiss Indictment Criminal No.:  5:13-CR-12-MTT against Defendant.

(C)   That he further agrees, if the defendant cooperates truthfully and completely with the government, including being debriefed and providing truthful testimony, at any proceeding resulting from or related to defendant's cooperation, to make the extent of the defendant's cooperation known to the sentencing court.  The government acknowledges that the defendant has done so thus far and said cooperation will be made known to the court.   If the defendant is not completely truthful and candid in his cooperation with the Government, the defendant may be subject to prosecution for perjury, false statements, obstruction of justice, and/or any other applicable charge.  If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" pursuant to 18 U.S.C.

8

Section 3553(e) and/or Section 5K1.1 of the advisory Sentencing Guidelines warranting a government motion at the time of sentencing recommending a downward departure from the advisory guideline range. If the cooperation is completed subsequent to sentencing, the Government agrees to consider whether such cooperation qualifies as "substantial assistance" pursuant to Rule 35(b) of the Federal Rules of Criminal Procedure warranting the filing of a motion for reduction of sentence within one year of the imposition of sentence. In either case, the defendant understands that the determination as to whether defendant has provided "substantial assistance" rests solely with the Government. Any good faith efforts on the part of the defendant that do not substantially assist in the investigation or prosecution of another person who has committed a crime will not result in either a motion for downward departure from the advisory guideline range or a Rule 35 motion. In addition, should the defendant fail to cooperate truthfully and completely with the Government, or if the defendant engages in any additional criminal conduct, the defendant shall not be entitled to consideration pursuant to this paragraph.

(D) Pursuant to Section 1B1.8 of the United States Sentencing Guidelines, the Government agrees that any self-incriminating information which was previously unknown to the Government and is provided to the government by the defendant in connection with defendant's cooperation and as a result of the defendant's plea agreement to cooperate will not be used in determining the advisory guideline range. Further, the government agrees not to bring additional charges against the defendant, with the exception of charges resulting from or related to violent criminal activity, as defined in 18 U.S.C. § 924(e)(2)(B)(I), based on any information provided by the

9

defendant in connection with the defendant's cooperation, which information was not known to the government prior to said cooperation. This does not restrict the government's use of information previously known or independently obtained for such purposes.

(E) As the defendant has affirmatively accepted responsibility as contemplated by the Sentencing Guidelines, the United States Attorney will recommend to the Court that the defendant receive a downward adjustment in the advisory guideline range. But the decision whether the defendant will receive any sentence reduction for acceptance of responsibility rests within the Court's discretion. The United States expressly reserves its right to furnish to the Court information, if any, showing that the defendant has not accepted responsibility, including, but not limited to, denying his involvement, giving conflicting statements as to his involvement, or engaging in additional criminal conduct including personal use of a controlled substance.

(5)

Nothing herein limits the sentencing discretion of the Court.

(6)

This agreement constitutes the entire agreement between the defendant and the United States, and no other promises or inducements have been made, directly or indirectly, by any agent of the United States, including any Assistant United States Attorney, concerning any plea to be entered in this case. In addition, defendant states that no person has, directly or indirectly, threatened or coerced defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

(7)

As an aid to this Court, the United States Attorney and the defendant, by and through defendant's counsel, enter into the following Stipulation of Fact. This stipulation is entered into in good faith with all parties understanding that the stipulation is not binding on the Court. Under U.S.S.G. Policy Statement Section 6B1.4(d), this Court may accept this stipulation as written or in its discretion with the aid of the Pre-Sentence Report determine the facts relevant to sentencing.

Subject to the above paragraph, the United States Attorney and the defendant stipulate and agree that the following facts are true and would be proven beyond a reasonable doubt at a trial:

**STIPULATION OF FACTS:**

A joint investigation by Macon Police Department, Federal Bureau of Investigation, Homeland Security Investigations, and Internal Revenue Service-Criminal Investigation was conducted on an establishment known as Sedona Tanning Salon, formerly known as

11

Soft Hands Massage located at 1922 Riverside Drive, Macon, GA. The investigation revealed that the establishment(s) operated, owned and controlled by co-defendant CHAE operated as a prostitution business from on or about March 1, 2008 through December 31, 2012.

For a limited period of time during the above-mentioned time period, from on or about November 30, 2012 to December 4, 2012, Defendant worked at Sedona Tanning Salon as a prostitute, providing sexual services for male customers. Defendant knew that prostitution services were the only services provided as she was not a masseuse and no tanning services were provided.

Defendant Noh came to Sedona Tanning Salon after being directed there by an associate of her friend. Defendant arrived at Sedona on or about by using a Korean taxi which transported her from Atlanta, GA to Macon, GA at 1922 Riverside Drive, Macon, GA. Upon arrival at Sedona Tanning she was greeted by an older woman who she referred to as "Auntie." Defendant believes that the person who was introduced to her as "Big Sister" was the owner of the business, namely co-defendant CHAE. Defendant admitted that in establishments like Sedona, namely those operating as places of prostitution, it is common for the women to not use their true names as the people involved recognize that their sexual activities are illegal.

Defendant admits that the person who she knew as "Auntie" told her about and showed her where the massage and shower would take place. Defendant admitted that she knew prior to her arrival what she would be expected to do, namely provide prostitution services to male patrons. Defendant admitted that the fee for the shower

12

and massage was $60 (sixty dollars) which was a "House Fee," $40 (forty dollars) for the women to use their hands on the customer's penis (commonly referred to as a "hand job"); $80 for the women to use their mouth on the customer's penis (oral sex) and $100 for sexual intercourse. The monies earned for prostitution went to the women working as prostitutes. Defendant admits the male customers paid using cash, VISA or Mastercard. "Auntie" would safeguard the monies. Defendant received cash from the owner or "Auntie" after providing prostitution services.

Defendant states during her brief period at Sedona Tanning Salon "Auntie," who served as manager, would greet the male customers. On the occasion(s) that the owner or "Big Sister" was present she would greet the male customers. The manager or owner would collect the initial $60 (sixty dollar) payment for the shower/massage. This fee belonged to the "house." The manager or owner would write down each woman's name, the time of services and the amount of money collected at the front desk. Defendant stated that when a male customer arrived she would take him to the shower room and give the customer a shower and then dry him off. Defendant would then take that customer in the massage room for a massage. The customer would ask about sexual services that he could receive or Defendant would ask the customer what he desired, hand job, oral sex or sexual intercourse. The customer might ask about pricing or Defendant might volunteer that information. Defendant admits any monies earned in excess of the house fee belonged to her. Defendant admits that the business did not service women and during the time she was there no women came into the business.

13

Defendant admits that the women as well as "Auntie" talked about being careful of law enforcement.

Defendant admitted that condoms were used for oral sex (mouth of the woman on the penis of the male customers) and sexual intercourse but not for hand jobs. Defendant admit that she had to purchase her own condoms, which she did so, at Walmart. Defendant would get a ride with co-defendant Jordan aka "LOVE" who possessed a vehicle to purchase the condoms. Defendant hid her condoms under a trash can in the business as she knew they should be hidden from plain view.

Defendant admits that during her short time, a few days, at the establishment she provided prostitution services to 5 (five) to 8 (eight) male patrons a day working from approximately 9:00 a.m. or 10:00 a.m. to midnight. On December 4, 2012 Defendant admits that she offered to have sexual intercourse with an undercover officer for $120 (one hundred and twenty dollars) as this was the price the undercover officer had told her that other massage parlors charged for sexual intercourse. Defendant admits that she knew illegal conduct was occurring at Sedona Tanning Salon namely the sale of sexual services, including prostitution for specified fees and she failed to inform law enforcement of such activities.

Defendant and the government stipulate and agree that the underlying offense of the Misprison of a Felony charge is Use of Interstate Facility to Promote, Manage and Carry on Prostitution (in violation of 18 U.S.C. §1952(a)(3)). The government and Defendant stipulate and agree that the value of the funds obtained by defendant through the use of a facility in interstate commerce should be limited to $2,400.00 which was

collected from the illegal prostitution business in violation of O.C.G.A. §16-6-9 and §16-6-10. The parties also agree that §3B1.2(b) Mitigating Role is applicable as Defendant was a minor participant.

Government agrees that Defendant should be sentenced at the bottom of the applicable guideline range.

(8)

## ACCEPTANCE OF PLEA AGREEMENT

Defendant understands and has fully discussed with defendant's attorney that this agreement shall become effective only upon the Court's acceptance of this agreement and the Court's acceptance of the plea of guilty by the defendant.

SO AGREED, this ____ day of _____ 2013.

MICHAEL J. MOORE
UNITED STATES ATTORNEY
MIDDLE DISTRICT OF GEORGIA

BY: _____
VERDA M. COLVIN
GEORGIA BAR NO. 018901
ASSISTANT UNITED STATES ATTORNEY

15

I, JIN NOH, have read this agreement and had this agreement read to me by my attorney, DAVID WEST, have discussed this agreement with my attorney and I fully understand it and agree to its terms.

*[signature]*
JIN NOH
DEFENDANT

I, DAVID WEST, attorney for defendant, JIN NOH, have explained the indictment and information and the government's evidence received through discovery and my investigation of the charge to defendant. I believe defendant understands the charge against defendant and the evidence that would be presented against defendant at a trial. I have read this agreement, have been given a copy of it for my file, and have explained it to defendant. To the best of my knowledge and belief, defendant understands this agreement.

*[signature]*
DAVID WEST
ATTORNEY FOR DEFENDANT